IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| LARRY FOSTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:15-cv-02331-JHE |
| | ) |
| CAROLYN W. COLVIN, acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**[1]

Plaintiff Larry Foster ("Foster") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI").[2] (Doc. 1). Foster timely pursued and exhausted his administrative remedies. This case is therefore ripe for review under 42 U.S.C. § 405(g). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

### I. Factual and Procedural History

Foster filed applications for a period of disability, DIB, and SSI in November 2012, alleging he became unable to work beginning November 29, 2010. (Tr. 140-148). The Agency

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 13).

[2] The judicial review provisions for DIB claims, 42 U.S.C. § 405(g), apply to claims for SSI. *See* 42 U.S.C. § 1383(c)(3).

1

initially denied Foster's application and Foster requested a hearing, where he appeared on June 26, 2014. (Tr. 25-72). After the hearing, the Administrative Law Judge ("ALJ") denied Foster's claim on August 6, 2014. (Tr. 10-21). Foster was a fifty-seven-year-old male on his hearing date. (Tr. 30). Foster has an eleventh-grade education. (Tr. 35). Foster's past relevant work was as a forklift operator, stocker, material handler, card changing textile worker, poultry hanger, saw operator inspector, and maintenance mechanic. (Tr. 16, 36-40, 56-57). Foster sought review by the Appeals Council, but it denied his request on October 27, 2015. (Tr. 1-4). On that date, the ALJ's decision became the final decision of the Commissioner. On December 28, 2015, Foster initiated this action. (*See* doc. 1).

## II. Standard of Review[3]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

---

[3] In general, the legal standards applied are the same whether a claimant seeks DIB or Supplemental Security Income ("SSI"). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

This Court must uphold factual findings supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[4] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)  whether the claimant is currently employed;
(2)  whether the claimant has a severe impairment;
(3)  whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];

---

[4] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

(4) whether the claimant can perform his or her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Foster last met the insured status requirements of the Social Security Act on December 31, 2013 (his date last insured or "DLI") and Foster had not engaged in substantial gainful activity after his alleged onset date of November 29, 2010. (Tr. 12). At Step Two, the ALJ found Foster has the following severe impairments: chronic hepatitis C without mention of coma (grade 2); evolving cirrhosis of live (stage 3-4); degenerative joint disease without stenosis and C6-7 with right sided disc protrusion with moderate stenosis, and non-specific arthralgia of upper extremities and shoulders. (*Id.*). The ALJ also considered Foster's medically determinable physical impairment of hepatitis B and mental impairment of alcohol abuse and found them to be non-severe. (Tr. 13-14). At Step Three, the ALJ found Foster did not have an

impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 25).

Before proceeding to Step Four, the ALJ determined Foster's residual functioning capacity ("RFC"), which is the most a claimant can do despite his impairments.  *See* 20 C.F.R. § 404.1545(a)(1).  The ALJ determined that, through his DLI, Foster had the RFC

> to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except limitations: he can frequently use foot and hand controls.  He can frequently climb ramps and stairs and occasionally climb ladders and scaffolds.  He can frequently balance, stoop, kneel, crouch, and crawl.  He should never be exposed to unprotected heights or operate a commercial motor vehicle.  He can frequently be exposed to moving mechanical parts.  He can tolerate frequent exposure to extreme cold and vibration.  He is limited to routine and repetitive tasks and simple work related decisions.  In addition to normal workday breaks, the claimant would be off task for 5% of a normal 8-hour workday (non-consecutive minutes).

(Tr. 15).

At Step Four, the ALJ determined that, through the date last insured, Foster could perform his past relevant work as a poultry hanger, as the work-related activities required by this work were not precluded by the limitations identified in the ALJ's assessment of Foster's RFC.  (Tr. 19).  At Step Five, the ALJ made the alternative determination, based on Foster's age, education, work experience, and RFC, jobs other than poultry hanger exist in significant numbers in the national economy that Foster could perform, including industrial cleaner, store laborer, dining room attendant, production assembler, cleaner, and parking lot attendant.  (Tr. 20).  Therefore, the ALJ determined Foster has not been under a disability and denied his claim.  (Tr. 21).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or if improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838

(11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Foster's only argument is the ALJ failed to correctly apply the Eleventh Circuit's pain standard in evaluating the credibility of his statements. (Doc. 13 at 4). The Eleventh Circuit "has established a three part 'pain standard' that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Subjective testimony supported by medical evidence satisfying the standard is sufficient to support a finding of disability. *Id.* However, the ALJ may still make a credibility determination on the claimant's statements about the intensity and effect of that pain. *See Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Hogard v. Sullivan*, 733 F.Supp. 1465, 1469 (M.D. Fla. 1990). The ALJ's adverse credibility determination must be supported by "explicit and adequate reasons," *Holt*, 921 F.2d at 1223, and substantial evidence, *see Foote*, 67 F.3d at 1561-62. An ALJ's clearly articulated credibility determination will not be disturbed if supported by substantial evidence. *Petteway v. Comm'r of Soc. Sec.*, 353 Fed. App'x. 287, 288 (11th Cir. 2009).

When evaluating the credibility of a claimant's statements regarding the intensity, persistence, or limiting effects of her symptoms, the ALJ considers all evidence, objective and

subjective.  *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p.[5]  The ALJ may consider the nature of a claimant's symptoms, the effectiveness of medication, a claimant's method of treatment, a claimant's activities, and any conflicts between a claimant's statements and the rest of the evidence.  *See* 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4); SSR 96-7p.  If an ALJ discredits a claimant's subjective complaints, "he must articulate explicit and adequate reasons for doing so."  *Wilson v. Comm'r of Soc. Sec.*, 284 F.3d 1219, 1225 (11th Cir. 2002).  "[I]f a credibility determination is inadequate, a remand to the agency for further consideration is the proper remedy."  *Carpenter v. Astrue*, No. 8:10-CV-290-T-TGW, 2011 WL 767652 (M.D. Fla. Feb. 25, 2011).  *See also Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 835 (11th Cir. 2011) (retreating from *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986), based on the prior precedent rule, and remanding to the agency).

The ALJ in this case appropriately evaluated Foster's claims of pain according to Eleventh Circuit precedent, the regulatory criteria, and SSR 96-7p.  (Tr. 15-19).  The ALJ applied the correct two-step process, (tr. 15-16), to conclude that while Foster's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . [Foster's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."  (Tr. 16-18).  He found those statements "partially credible" in light of the medical evidence in the record, concluding notwithstanding Foster's severe physical impairments he was capable of performing work at the medium level with some restrictions.  (Tr. 18).

---

[5] SSR 96-7p was superseded by SSR 16-3p, 2016 WL 1119029, which was published in the Federal Register on March 16, 2016, and became effective March 28, 2016, *see* 2016 WL 1237954.  The ALJ in this case issued his ruling on August 6, 2014, well before the publication or effective date of that ruling.

To make this determination, the ALJ placed great weight on the consultative medical report of Dr. Imad Khdair, who found (despite Foster's complaints of back pain) no back tenderness, deformity, or spasm. (Tr. 17-18, 280-282). Foster admitted to Dr. Khdair he had no limitations in walking, sitting, or standing, and he stated he could lift up to fifty pounds and carry up to forty pounds. (Tr. 280). In Dr. Khdair's opinion, based on his medical findings, Foster was capable of performing work-related activities "such as sitting, standing, walking, lifting, carrying, and handling objects." (Tr. 282). The ALJ also gave great weight to a non-treating, non-examining physician, Dr. Richard Whitney, who found no evidence of limitations related to Foster's liver or back. (Tr. 18, 77). In addition to the medical evidence, the ALJ found Foster's reports of his daily activities and statements, both at the hearing and elsewhere, undermined the credibility of his pain testimony. (Tr. 18). In his function report, Foster indicated he could prepare complete meals, perform "everything" as far as indoor and outdoor chores (including yard work, which Foster listed as a hobby he engaged in every day), walk for long periods, watch TV, and ride in a car. (Tr. 18, 181-188). At the hearing, Foster testified his cramps were helped by medication with no side effects. (Tr. 40-41, 46-47). And the ALJ noted (although as nonconclusive and nondeterminative) Foster exhibited none of the symptoms he claimed at the hearing. (Tr. 16, 18).

Foster's main complaint is the ALJ's credibility determination failed to take into account Foster's impairments in combination, which he says would have compelled a finding Foster could engage in only sedentary work. (Doc. 13 at 5-7). Because the vocational examiner stated Foster had no skills that transferred to sedentary work, Foster says, this should have compelled a finding of disability based on his age, education, and past work experience. (Doc. 13 at 7-8). In support, Foster cites his longitudinal medical history, which includes frequent treatment from the VA for cervical radiculopathy, chronic hepatitis C, and muscle cramps; a visit to the emergency room for

arm pain, cramping, and cervical radiculopathy, where an MRI showed advanced cervical spondylosis; and records showing complaints of cramps and fatigue. (*Id.* at 6). However, the ALJ did consider the longitudinal medical record, and in fact discusses at length the medical evidence Foster cites. (*See* tr. 16-18). The ALJ concluded Foster's testimony regarding the disabling nature of his cramps was not entirely credible based on Foster's own reports at the hearing and to Dr. Khdair, as well as the basically normal results of physical examinations apart from decreased lumbar and left shoulder range of motion. (Tr. 18). He noted the emergency room visit cited by Foster yielded a physical examination revealing 5/5 strength in Foster's major muscle groups, a fully-moving left arm with no issue, a normal gait, and "gross sensory intact." (Tr. 16, 290). Foster's longitudinal medical history certainly supports complaints of various medical impairments, but the ALJ did not misconstrue that record to find symptoms of those impairments did not limit Foster's ability to work to the extent he alleged. The ALJ's conclusion is supported by substantial evidence.

Nor did the ALJ improperly fail to consider the combination of Foster's impairments in assessing his RFC. The Commissioner points to the ALJ's determination at Step Three Foster "does not have an impairment or combination of impairments that meets or medically equals the severity of" one of the listings as sufficient evidence the ALJ considered the impairments in combination. (Doc. 14 at 13) (citing *Wilson v. Barnhardt*, 284 F.3d 1219, 1224-25 (11th Cir. 2002)). While this certainly suggests the ALJ considered the combination of Foster's impairments when assessing whether Foster met a listing, it does not follow the ALJ considered their combined effects in formulating his RFC. However, other evidence, including the RFC itself, indicates the ALJ did properly consider Foster's impairments in combination. The ALJ, "consider[ing] all symptoms and the extent to which these symptoms can reasonable be accepted as consistent with

the objective medical evidence and other evidence," limited Foster's work to routine and repetitive tasks "due to some fatigue from cirrhosis of the liver." (Tr. 15, 18). The ALJ also limited Foster to only frequently reaching overhead, using foot and hand controls, and climbing ramps and stairs, while occasionally climbing ladders and scaffolds, accounting for his limitations in range of motion. (Tr. 15). Additionally, the RFC reflects the limitations Foster alleged due to cramping in that it provides Foster would be "off task for 5% of a normal 8-hour workday," which comports with Foster's statement his cramps lasted for about five minutes at a time. (Tr. 15, 46). Beyond Foster's conclusory statement, there is no evidence his symptoms concurred to compel a finding he could only engage in sedentary work, and the ALJ's finding medium work with limitations accounting for the combined effects of Foster's symptoms—"defaulting in [Foster's] favor as much as possible," (tr. 18)—was supported by substantial evidence.

Finally, Foster takes issue with the ALJ's use of his daily activities to rebut his testimony. In support, he cites *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997), for the proposition a claimant's participation in everyday activities does not disqualify him from disability. (Doc. 13 at 8). In *Lewis*, the district court rejected the claimant's treating physicians' opinions because the claimant performed "everyday activities of short duration." 125 F.3d at 1441. Here, there were no limitations from treating physicians—or any physicians at all, for that matter—for the ALJ to reject, and the activities identified by the ALJ were substantially more involved than those in *Lewis*. More importantly, the ALJ did not use evidence of Foster's daily activities as dispositive of disability, but rather contrasted that evidence with Foster's inconsistent subjective claims of limitations. It was not improper for the ALJ to do so. *See also Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) ("The regulations do not . . . prevent the ALJ from considering daily activities at the fourth step of the sequential evaluation process.").

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Foster's claim for a period of disability and DIB is **AFFIRMED**, and this action is **DISMISSED WITH PREJUDICE**.  A separate order will be entered.

DONE this 27th day of March, 2017.

                                                  **JOHN H. ENGLAND, III**
                                                  UNITED STATES MAGISTRATE JUDGE